

**ORDERED in the Southern District of Florida on January 12, 2022.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

*Tagged Opinion*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:

                                    Case No. 18-23930-PDR

Emma Bumshteyn,

                                    Chapter 7

      Debtor.

_____/

Kenneth Welt,

      Plaintiff,

v.                                  Adv. No. 21-01069-PDR

Emma Bumshteyn and Yevgeniya
Bumshteyn,

      Defendants.

_____/

<u>**ORDER DENYING MOTION TO DISMISS OR TRANSFER**</u>

On February 26, 2021, the Trustee filed an adversary proceeding against the Debtor, Emma Bumshteyn, and her granddaughter, Yevgeniya Bumshteyn alleging that the Debtor systematically transferred various assets to the Granddaughter. The Amended Complaint asserts five objections to discharge against the Debtor under 11 U.S.C. § 727 (Counts I–V), three counts for avoidance of fraudulent transfers against the Granddaughter under 11 U.S.C. § 544 and Florida and New York fraudulent transfer law (Count VI–VIII), and one count for recovery of avoided transfers against the Granddaughter under 11 U.S.C. § 550 (Count IX). The Granddaughter seeks to have the entire case dismissed or transferred to the Southern District of New York. The Trustee opposes the Motion.

## Background

The Debtor owns N.Y. Nevada Taxi Corp. (the "Company"), a New York-based taxi company. In 2012, Melrose Credit Union loaned the Company $1.3 million, which the Debtor personally guaranteed (the "Loan"). The Loan was secured by taxi medallions and shares of stock in the Company. When the Loan matured on October 9, 2015, the Company owed approximately $1.2 million on the Loan. Melrose, however, agreed to modify the agreement in October 2015.

Shortly after the parties entered into the Modification Agreement, the Debtor allegedly made the following transfers to her Granddaughter:

(1)     the June 2016 sale of a Hallandale Beach, FL condominium (the "First Hallandale Condo"), which was owned solely by the Debtor, the proceeds from which were deposited into a bank account that was jointly owned by the Defendants;

(2)     the Granddaughter's withdrawal of over $230,000 from the Defendants' jointly held bank account (the "Bank Account") for her sole benefit between October 30, 2015, and November 1, 2016;

(3)     the July 2016 transfer of a second Hallandale Beach, FL condominium (the "Second Hallandale Condo") held in a life estate by the Debtor with the remainder held by the Granddaughter into the Bumshteyn Family Irrevocable Inter Vivos Trust (the "Trust");

(4)     the July 2016 sale of the Defendants' jointly-owned property in Fresh Meadows, NY (the "Fresh Meadows Property") for which all of the proceeds were transferred to the Granddaughter;

(5)     the August 2016 transfer for no consideration of a property in Flushing, NY jointly owned by the Defendants (the "Flushing Property") into the Granddaughter's name alone and its subsequent sale in May 2017; and

(6)     the withdrawal of approximately $96,000 of the Debtor's life insurance proceeds between July 2017 and November 2017.

On November 8, 2018, the Debtor filed her voluntary Chapter 7 bankruptcy petition;[1] Kenneth Welt was appointed the Chapter 7 Trustee. Melrose filed a $1.2 million claim against the estate.

---

[1] *In re Bumshteyn*, No. 18-23930-PDR (the "Main Case") (Claim 1-1) (Bankr. S.D. Fla. Dec. 6, 2018).

<u>**Analysis**</u>[2]

The Granddaughter's motion argues that the Court must dismiss or transfer the case to the Southern District of New York because it lacks personal jurisdiction and, even if the Court has personal jurisdiction over the Granddaughter, venue is improper and transfer to the Southern District of New York is appropriate.

## I.    **Personal Jurisdiction**

The Granddaughter argues that the case must be dismissed or transferred to the Southern District of New York because this Court cannot assert personal jurisdiction over her.  To establish personal jurisdiction over a defendant, federal courts must have both (1) statutory and (2) constitutional authority to do so.  *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).

### A.    <u>Statutory Authority</u>

When a case arises under a federal statute, such as the Bankruptcy Code, the United States is the sovereign asserting personal jurisdiction.  *See In re Jimenez*, 627 B.R. 536, 544 (Bankr. S.D. Fla. 2021); *In re Hellas Telecomm. (Luxembourg) II SCA*, 547 B.R. 80, 96–97 (Bankr. S.D.N.Y. 2016).  "When a federal statute provides for

---

[2] The Court notes that the Granddaughter failed to timely renew her transfer request or seek relief from the Court's deadline to file it.  *See* (Docs. 31 & 45).  On that basis alone, the Court may be justified in denying her request.  *See* (Doc. 57); Fed. R. Bankr. P. 9024; Fed. R. Civ. P. 60; *see, e.g., Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 720 (11th Cir. 2020) (explaining that an order dismissing a complaint with leave to amend within a specified time "becomes a final judgment if the time allowed for amendment expires without the plaintiff seeking an extension" and that the only recourse for a plaintiff under those circumstances is to first seek relief under Fed. R. Civ. P. 59 or 60).  In the interest of resolving issues on the merits, however, the Court considers the Granddaughter's request.

nationwide service of process, it becomes the statutory basis for personal jurisdiction over a person served according to the statute." *S.E.C. v. Marin*, 982 F.3d 1341, 1349 (11th Cir. 2020) (quoting *BCCI Holdings*, 119 F.3d at 942) (cleaned up).

Fed. R. Bankr. P. 7004 provides for nationwide service of process in bankruptcy proceedings.  Though the Granddaughter acknowledges that she was properly served in the United States under the rule, she argues that because it is simply a rule of bankruptcy procedure, not a statute, it provides an insufficient basis to assert personal jurisdiction through nationwide service of process.  In support of her argument, the Granddaughter primarily relies on two cases: *Car Care Ctr. of Crystal Lake Ltd. v. Miller (In re Miller)*, 336 B.R. 408 (Bankr. E.D. Wis. 2005) and *Scroggins v. BP Expl. & Oil (In re Brown Transp. Truckload, Inc.)*, 161 B.R. 735 (Bankr. N.D. Ga. 1993).  In *Miller*, the bankruptcy court explained that Supreme Court precedent established that subject matter jurisdiction could be established only by statute, not by court rule.  *See Miller*, 336 B.R. at 412 (citing *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004)).  In *Brown Transp.*, the bankruptcy court determined, in relevant part, that if the Bankruptcy Code and Federal Rules of Bankruptcy Procedure conflict, the Bankruptcy Code prevails.  *See Brown Transp.*, 161 B.R. at 738.  These cases do not address the question of whether the Federal Rules of Bankruptcy Procedure were promulgated with sufficient authority for Rule 7004 to establish personal jurisdiction in bankruptcy cases through nationwide service of process.  There is, however, case law on the subject – it just rejects the Granddaughter's argument.

Congress delegated to the federal courts the "power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11." 28 U.S.C. § 2075. The Federal Rules of Bankruptcy Procedure, including Rule 7004, have consequently been repeatedly upheld as a constitutional exercise of congressional authority. *See, e.g.*, *Warfield v. KR Ent., Inc. (In re Fed. Fountain, Inc.)*, 165 F.3d 600, 601 (8th Cir. 1999); *Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1244–45 (7th Cir. 1990) (explaining that Rule 7004 could be applied to allow nationwide service of process even "in non-core, related proceedings"); *In re Paques, Inc.*, 277 B.R. 615, 629 (Bankr. E.D. Pa. 2000) ("Rule 7004(d), which was enacted pursuant to the Bankruptcy Rules Enabling Act, 28 U.S.C. § 2075, and thus authorized by Congress, has been upheld as a constitutional exercise of federal power."). For this reason, courts throughout the nation have repeatedly held that Rule 7004 is sufficient to confer personal jurisdiction in bankruptcy proceedings through nationwide service of process. *See, e.g.*, *In re Capmark Fin. Grp. Inc.*, 479 B.R. 330, 339 (Bankr. D. Del. 2012) ("It is well-settled that [Rule 7004] authorizes nationwide personal jurisdiction regardless of the fact that the grant is contained in a rule rather than a federal statute.") (cleaned up). The Court agrees and concludes that Rule 7004 carries the force and effect of law. As such the Court may rely on Rule 7004 to assert personal jurisdiction over the Granddaughter.

B.     Constitutional Authority

The Court next considers whether asserting personal jurisdiction over the Granddaughter comports with constitutional requirements of due process.  *See* Fed. R. Bankr. P. 7004(f); *Marin*, 982 F.3d at 1349 (affirming that the Southern District of Florida had personal jurisdiction over a New York defendant in a case under federal securities law because the United States was the relevant sovereign).  "The exercise of personal jurisdiction comports with due process when (1) the nonresident defendant has purposefully established minimum contacts with the forum and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice."  *Marin*, 982 F.3d at 1349 (quoting *S.E.C. v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997)).

1.     Minimum Contacts

"Where, as here, the Fifth Amendment applies because personal jurisdiction is based on a federal statute authorizing nationwide service of process, the applicable forum for minimum contacts purposes is the United States, not the state in which the district court sits."  *Marin*, 982 F.3d at 1349 (cleaned up); *Jimenez*, 627 B.R. at 544; *Hellas Telecomm.*, 547 B.R. at 97.  The Granddaughter argues that she lacks sufficient minimum contracts with Florida, but the sovereign at issue is the United States.  The Granddaughter clearly has sufficient minimum contacts with the United States because she resides and was served in the United States.  *See, e.g.*, *Jimenez*, 627 B.R. at 545.  Consequently, the Court finds that the Granddaughter has sufficient minimum contacts with the United States.

2.    Traditional Notions of Fair Play & Substantial Justice

The Court finally considers whether asserting personal jurisdiction over the Granddaughter offends traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In doing so, the Court first asks whether she has "presented a compelling case" that litigation in this Court is "so unreasonable that [her] liberty interests have actually been infringed." *Marin*, 982 F.3d at 1350 (quoting *BCCI Holdings*, 119 F.3d at 946); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (explaining that a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable"). Only if the Court finds that the Granddaughter has made a compelling case does the Court consider whether, on balance, the burdens upon her outweigh the federal interest in the litigation. *See Marin*, 982 F.3d at 1350 (quoting *BCCI Holdings*, 119 F.3d at 946).

Here, the Court need not consider the balancing test because the Granddaughter only argues inconvenience. In fact, by suggesting transfer itself, the Granddaughter explicitly acknowledges that there is some theoretical sufficient accommodation short of finding the exercise of jurisdiction unconstitutional. *See Burger King*, 471 U.S. at 477 ("Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, … a defendant claiming substantial inconvenience may seek a change of venue."). Consequently, the Court finds that the Granddaughter has not presented

a compelling case that litigation in this Court is so unreasonable that her liberty interests have been infringed.  As a result, the Court finds it has personal jurisdiction over the Granddaughter and turns to the question of whether transfer is appropriate.

## II.    **Venue**

The Granddaughter argues that transfer of venue is statutorily necessary or, at the very least, appropriate in the interests of justice and for the convenience of the parties.  This court is an appropriate venue and transfer in the interest of justice or convenience of the parties is not warranted.

### A.    Statutory Analysis

This adversary proceeding raises claims "arising under" the Bankruptcy Code.  *See* 28 U.S.C. § 1334(b); *Continental Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999).  Under 28 U.S.C. § 1409(a), absent very specific exceptions, proceedings "arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  The Main Case, in which this adversary is pending, was filed before this Court and the Granddaughter has provided no argument explaining why this adversary proceeding falls under any of the exceptions to the general rule.  Under § 1409, therefore, this Court is not just an appropriate venue for this adversary proceeding, it is the *most appropriate* venue.  Accordingly, the Court finds no statutory concern with maintaining the case in this Court.

B.     Interests of Justice or Convenience of the Parties

The Court can transfer the case "in the interest of justice or for the convenience of the parties."[3]  28 U.S.C. § 1412; Fed. R. Bankr. P. 7087.  Motions to transfer under § 1412 are subject to the broad discretion of the Court and it is the movant's burden to prove by a preponderance of the evidence that transfer is appropriate.  *See UMB Bank, N.A. v. Sun Capital Partners V, LP*, No. 9:19-CV-80074, 2019 WL 9049056, at *1 (S.D. Fla. June 12, 2019) (transferring a fraudulent transfer action to the district where the main bankruptcy case was pending); *In re Rohalmin*, 598 B.R. 900, 906 (Bankr. S.D. Fla. 2019).

Courts have, in their discretion, used a variety of factors to consider whether transfer of a proceeding is appropriate, but this Court is bound to consider "the economic and efficient administration of the estate" as the most important factor.  *In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979);[4] *see also UMB Bank*, 2019 WL 9049056, at *1; *Unico Holdings, Inc. v. Nutramax Prod., Inc.*, 264 B.R. 779, 783 (Bankr. S.D. Fla. 2001); *ICICI Bank Ltd. v. Essar Global Fund Ltd.*,

---

[3] Some courts have held that non-core matters must be transferred under 28 U.S.C. § 1404(a) because 28 U.S.C. § 1412 only references "proceeding under title 11."  *See, e.g., Southstar Cap. Grp., I, LLC v. 1662 Multifamily LLC*, No. 6:18-cv-1453, 2019 WL 3752892, at *3 (M.D. Fla. Aug. 8, 2019); *In re Lehman Brothers Holdings Inc.*, 594 B.R. 33, 49–50 (Bankr. S.D.N.Y. 2018).  Whether this case is, in its entirety, a "core" proceeding remains a pending question before this Court.  However, both parties applied § 1412 and, even if § 1412 is inapplicable, the analysis under 28 U.S.C. § 1404(a) under these facts would be nearly identical and would generate the same result.

[4] All Fifth Circuit cases submitted for decision before October 1, 1981, are binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

565 B.R. 241, 257 (S.D.N.Y. 2017).   The factors often applied when considering

transfer of bankruptcy proceedings in this circuit include:

(1)   the economics of the bankruptcy estate administration,
(2)   the presumption in favor of the "home court",
(3)   judicial efficiency,
(4)   the plaintiff's ability to receive a fair trial,
(5)   the state's interest in having controversies decided by those
      familiar with its laws,
(6)   the enforceability of any judgment rendered, and
(7)   a plaintiff's original choice of forum.

*UMB Bank*, 2019 WL 9049056, at *1 (citing *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d

958, 974 n.26 (11th Cir. 2012)); *In re Manville Forest Prod. Corp.*, 896 F.2d 1384, 1391

(2d Cir. 1990) (affirming ruling of the bankruptcy court that transfer was

inappropriate because the interest of efficient administration of the estate cut against

transfer even where the movant had established that transfer convenient); *see also*

*Tujague v. Adkins*, No. 4:18-CV-00631, 2018 WL 4538270, at *2 (E.D. Tex. Sept. 21,

2018); *Meininger v. Euram, LLC (In re Land Resource, LLC)*, No. 6:10-ap-273, 2011

WL 13389606, at *2 (Bankr. M.D. Fla. Aug. 10, 2011); *Martinez v. Hutton (In re*

*Hawrwell)*, 381 B.R. 885, 892 (Bankr. D. Colo. 2008); *Alexander v. The Steel Law*

*Firm, P.C. (In re Terry Mfg. Co. Inc.)*, 323 B.R. 507, 510 (Bankr. M.D. Ala. 2005).

      1.   <u>Economics of the Bankruptcy Estate & Presumption in Favor of
the Home Court.</u>

Because the economics of the bankruptcy estate and presumption in favor of

the home court are generally considered inextricably intertwined, they are often

analyzed together.  *See UMB Bank*, 2019 WL 9049056, at *1–2.  This is the home

court and only the most unusual circumstances support transfer away from it.  *See*

*id.* (quoting Collier on Bankruptcy, ¶ 4.03).  The most common circumstance that

might favor transfer is the existence of a related action in another district. *See id.* (quoting *Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*, No. 13 Civ 5349, 2013 WL 5798986, at \*5 (S.D.N.Y. Oct. 22, 2013)).

Here, no circumstances exist to justify transferring the case away from the home court. In fact, the Court finds several factors that suggest transferring the case would negatively affect the economic and efficient administration of the bankruptcy case. The Granddaughter has not provided, nor can the Court find, any support for the notion that parties should litigate issues as crucial to the Main Case as objections to discharge and fraudulent transfers in any venue other than the home court. The Court can hardly conceive of any such circumstance. Additionally, the Estate is likely to incur significant additional fees and costs if forced to litigate this matter in New York, such as retention of local counsel. Lastly, as a general matter, the Court recognizes that district court litigation is often far slower moving and would likely slow resolution of this case. In short, litigating this matter outside the home court is antithetical to the economic and efficient administration of the Estate. To the contrary, the economic and efficient administration of the Estate and the presumption in favor of the home court strongly disfavor transfer.

### 2.    Judicial Economy

Judicial economy considerations strongly support keeping this case in the home court. The Main Case has been pending in this Court since 2018. It would be grossly inefficient and unwise to now ask another court that is not as familiar with the issues in the Main Case to resolve a core proceeding. Again, such a decision would

only make sense under the most unusual circumstances. More importantly, as already stated, five of the nine counts in this case are objections to discharge under § 727. The Granddaughter has not provided, nor can the Court find, any support for the notion that objections to discharge should ever be heard by a court other than the court hearing the Main Case. Judicial economy, therefore, strongly disfavors transfer.[5]

### 3.    Plaintiff's Ability to Receive a Fair Trial

The Trustee has made no statement to indicate that he has any concern about the prospect of receiving a fair trial in the Southern District of New York, and certainly has no such concern in this Court – the Court in which he filed the case. As a result, this factor is not relevant to the Court's analysis.

### 4.    State Interests

There is no state interest in having cases that arise under the Bankruptcy Code be decided in particular federal venues. The Granddaughter has questioned whether New York or Florida law applies to the questions of state law before the Court. However, state law only arises in this case incidentally to the Bankruptcy Code, specifically § 544, in three of the nine counts. To whatever degree any concern over this Court's ability to apply New York law might exist, the fact that the statutes are nearly, if not entirely, substantively identical, eviscerates any possible concern – New York adopted the Uniform Fraudulent Transfer Act ("UFTA") on April 4, 2020, and

---

[5] At the Court's second hearing on this *Motion*, the Granddaughter suggested that perhaps the case could be bifurcated, but there is no pending motion seeking bifurcation pending before the Court for it to consider.

Florida has used the UFTA for years. *See* Fla. Stat. §§ 726.105–726.108; N.Y. Debt. & Cred. §§ 273–276. Therefore, even if New York law were applied here the Court finds this factor does not support transfer.

### 5. Enforceability of Judgments

This matter arises under the Bankruptcy Code. Nothing under the Bankruptcy Code, nor any other law, would affect the enforceability of the judgments entered by this Court.[6] Accordingly, this factor does not support transfer.

### 6. Plaintiff's Original Choice of Forum

The plaintiff in this case is the Trustee and he chose to litigate this matter in the home court. Not only does this Court give weight to a plaintiff's choice of forum, but here that choice only further cements that the Trustee – who holds the duty to administer the bankruptcy estate – believes that this is the best forum in which to bring the case.

Therefore, the interests of justice strongly disfavor transfer. The Granddaughter has further sought transfer based on convenience of the parties. However, this Court declines the request to transfer because the interests of justice not only do not support transfer, but strongly favor keeping this case in the home court.

Accordingly, the Court **ORDERS** that the *Renewed Motion to Transfer* (Doc. 48) is **DENIED**.

---

[6] The Granddaughter has objected to the entry of final judgments by this Court. To whatever extent the Granddaughter is correct and the Court cannot enter final judgments on some of the counts in this complaint, that question is not relevant to the issue of enforceability raised in the transfer motion. Accordingly, the Court does not consider it here.

# # #

Copies To:
Zach B. Shelomith, Esq.

*Zach B. Shelomith, Esq. is directed to serve this Order on all interested parties.*