

ORDERED in the Southern District of Florida on February 1, 2022.



**Peter D. Russin, Judge
United States Bankruptcy Court**

___

*Tagged Opinion for Print Publication*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

In re:

Emma Bumshteyn,

    Debtor.

_____/

Kenneth Welt,

    Plaintiff,

v.

Emma Bumshteyn and
Yevgeniya Bumshteyn,

    Defendants.

_____/

Case No. 18-23930-PDR

Chapter 7

Adv. Case No. 21-01069-PDR

**ORDER GRANTING IN PART
RENEWED MOTION TO STRIKE**

This is a cautionary tale for parties who wish to demand a jury trial and object to the bankruptcy court entering final orders and judgments that emphasizes the need to comply with the applicable local rules and orders and, if compliance must be delayed or challenged, seek timely relief. Ignoring the requirements risks waiving these important rights. That is what happened here.

## Background

The Debtor Emma Bumshteyn, filed a voluntary Chapter 7 petition on November 8, 2018, and Kenneth Welt was appointed the Chapter 7 Trustee of the Estate.[1] On February 26, 2021, the Trustee filed this adversary proceeding which includes five counts against the Debtor objecting to discharge under 11 U.S.C. § 727 (Counts I–V), three counts against the Debtor's granddaughter, Yevgeniya Bumshteyn, for avoidance of fraudulent transfers under 11 U.S.C. § 544 (Counts VI–VIII), and one count against the Granddaughter to recover the avoided fraudulent transfers under 11 U.S.C. § 550 (Count IX).[2]

On March 1, 2021, the Court issued a summons setting March 31, 2021, as the deadline for the Defendants to respond to the Trustee's Complaint (the "Response Deadline") and setting a status conference for April 15, 2021.[3] The same day, the Court entered its *Order Setting Status Conference and Establishing Procedures and Deadlines* (the "Status Conference Order"), a standard order entered in every

---

[1] *See In re Bumshteyn*, No. 18-23930-PDR (Bankr. S.D. Fla.) (the "Main Case").

[2] (Doc. 1).

[3] (Doc. 2).

adversary proceeding in this district.[4] The Status Conference Order, in relevant part, states:

> 2. **RIGHT TO JURY TRIAL; WAIVER.** Unless each party has timely filed a statement of consent under Local Rule 9015−1(B), and unless otherwise ordered by the Court, not later than **fourteen days** before the date first set for the status conference, each party requesting a jury trial on any issue in this proceeding must file with this Court a motion for withdrawal of the reference pursuant to Local Rule 5011−1. **FAILURE OF ANY PARTY TO FILE A MOTION TO WITHDRAW THE REFERENCE ON OR BEFORE THE DEADLINE PROVIDED IN THIS PARAGRAPH CONSTITUTES WAIVER BY SUCH PARTY OF ANY RIGHT TO TRIAL BY JURY IN THIS PROCEEDING.**
>
> 3. **OBJECTION TO ENTRY OF FINAL ORDERS AND JUDGMENTS BY THE BANKRUPTCY COURT; CONSENT.** Unless otherwise ordered by the Court, not later than **fourteen days** before the date first set for the status conference, each party objecting to the entry of final orders or judgments by this Court on any issue in this proceeding must file with this Court a motion pursuant to Rule 7016(b), Fed. R. Bankr. P., requesting that this Court determine whether this proceeding is subject to the entry of final orders or judgments by this Court. Any such motion will be treated as an objection to the entry of final orders or judgments by this Court. **FAILURE OF ANY PARTY TO FILE A MOTION ON OR BEFORE THE DEADLINE PROVIDED IN THIS PARAGRAPH CONSTITUTES CONSENT BY SUCH PARTY TO THIS COURT ENTERING ALL APPROPRIATE FINAL ORDERS AND JUDGMENTS IN THIS PROCEEDING.** Nothing in this paragraph limits this Court's ability to determine whether this proceeding is subject to entry of final orders or judgments by this Court.[5]

The deadline under the Status Conference Order to file motions to withdraw the reference and to determine whether this proceeding is subject to the entry of final

---

[4] (Doc. 3) (the "Status Conference Order").

[5] (Doc. 3) (emphasis in original).

orders or judgments by this Court (the "Motions Requirement") was April 1, 2021 (the "Motions Deadline"), the day after the Response Deadline.

Sometime prior to the expiration of the Response Deadline, the parties agreed to extend it to April 8, 2021. Apparently, there was no agreement to also extend the Motions Deadline. The Parties did not provide any notice of the agreed extension to, or seek approval of, the Court.

On April 8, 2021, the Defendants filed an answer and affirmative defenses[6] that included the Granddaughter's demand for a jury trial and objection to this Court entering final orders and judgments ("Article III adjudication").[7] The Granddaughter did not, however, comply with the Motions Requirement; to date, she has neither filed the required motions nor affirmatively sought relief from the Motions Requirement.

Shortly after the Motions Deadline expired and the Defendants answered, the Trustee filed his *Motion to Strike Demand for Jury Trial and Affirmative Defenses*.[8] The Trustee argues that the Granddaughter implicitly waived her purported jury trial and Article III adjudication rights by asserting them in an untimely and procedurally improper manner, and that the Defendants have improperly raised jurisdiction and standing as affirmative defenses. In opposition, the Granddaughter

---

[6] (Doc. 7).

[7] The Answer clearly indicates that only the Granddaughter objects to the Court's authority to enter final orders, but it does not specifically state who asserts a jury trial right. At the hearing, counsel for the Defendants clarified that only the Granddaughter, not the Debtor, asserts a right to a jury trial. To whatever extent the Debtor does assert a jury trial right, however, the Court notes that its analysis would apply equally to both Defendants.

[8] (Doc. 8).

contests waiver and asserts the Court's procedures are unconstitutional, and the Defendants argue they appropriately assert the affirmative defenses.

Ultimately, by agreement, the Trustee filed an Amended Complaint, the Defendants answered, and the Trustee renewed his motion to strike, which the Defendants opposed.[9] These documents are nearly identical to the originals. The Court heard the Renewed Motion on November 3, 2021.[10]

### Legal Standard

Under Fed. R. Civ. P. 12(f), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are a "drastic remedy" that is "disfavored by the courts." *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 670 (S.D. Fla. 2013) (quoting *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002)) (cleaned up). Consequently, courts generally will not strike a pleading unless it is irrelevant to the proceedings and is prejudicial. *See, e.g., Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 696 (11th Cir. 2015); *Adams*, 294 F.R.D. at 270; *Carter v. Flagler Hospital, Inc. (In re Carter)*, 411 B.R. 730, 742 (Bankr. M.D. Fla. 2009); *In re Se. Banking Corp. Sec. & Loan Loss Reserves Litig.*, 147 F. Supp. 2d 1348, 1355 (S.D. Fla. 2001).

---

[9] (Docs. 30, 39, 40, & 63).

[10] (Doc. 57).

## Analysis

For the reasons that follow, the Court finds that (1) the Granddaughter has waived her right to a jury trial and Article III adjudication, (2) the Court's procedures are appropriate and constitutional, and (3) the Defendants' jurisdiction and standing affirmative defenses are proper.

### I. The Granddaughter has waived her jury trial and Article III adjudication rights.

A defendant implicitly consents to a bench trial and final adjudication by the bankruptcy court where she knowingly and voluntarily waives her rights. *Wellness Int'l Net., Ltd. v. Sharif*, 575 U.S. 665, 675 (2015); *Lindsey v. Duckworth Dev. II, LLC (In re Lindsey)*, 854 F. App'x 301, 307 (11th Cir. 2021); *Herrera-Edwards v. Moore (In re Herrera-Edwards)*, 578 B.R. 853 (Bankr. M.D. Fla. 2017). To determine whether a litigant has knowingly and voluntarily waived, the "key inquiry is whether the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non-Article III adjudicator." *Lindsey*, 854 F. App'x at 307 (quoting *Wellness*, 575 U.S. at 675) (cleaned up). Failure to make a proper and timely objection constitutes implicit consent. *See Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 566–570 (9th Cir. 2012), *aff'd* 573 U.S. 25 (2014); *British Am. Ins. Co. Ltd. v. Fullerton (In re British Am. Ins. Co. Ltd.)*, 600 B.R. 890, 896 (Bankr. S.D. Fla. 2019) ("*British Am. III*"); *British American Isle of Venice v. Fullerton (In re British Am. Ins. Co., Ltd.)*, No. 11-03117-EPK, 2013 WL 211336, at *4 n. 6 (Bankr. S.D. Fla. Jan. 18, 2013) ("*British Am. I*"); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

The Status Conference Order, which is a standard order entered in all adversary proceedings in this district, requires parties who wish to demand a jury trial to file a motion to withdraw the reference, and parties who wish to assert Article III adjudication rights to file a motion to determine whether the proceeding is subject to the entry of final orders or judgments by this Court, both within fourteen days before the date first set for the status conference.

In a recent case, the Eleventh Circuit concluded that a defendant implicitly consented to the bankruptcy court's entry of final orders when he answered the complaint without contemporaneously filing his objection "no later than the date set for filing a response to the complaint," as required by the local rules for the Bankruptcy Court for the Middle District of Florida. *Lindsey*, 854 F. App'x at 308 (quoting Bankr. M.D. Fla. Local Rule 7001-1(k)(6)). The Eleventh Circuit's conclusion is consistent with case law from this district explaining that the failure to comply with the Motions Deadline and Motions Requirement constitutes waiver. *See British Am. I*, 2013 WL 211336, at *3–4.

But the facts of this case present a unique set of circumstances. In comparing the language of Bankr. M.D. Fla. Local Rule 7001-1(k)(6) considered by the Eleventh Circuit in *Lindsey*, and the Southern District's Status Conference Order, there are relevant differences. Specifically, the Motions Deadline, unlike Bankr. M.D. Fla. Local Rule 7001-1(k)(6), is tied to what may seem to be an arbitrary date two weeks before the date first set for the status conference rather than an action establishing the defendant's voluntary appearance to try the case, such as the filing of an answer.

The reality, of course, is that the Motions Deadline is not "arbitrary." In most instances, a defendant will have answered and "appeared to try the case" at the time of the Motions Deadline. In this case, had the parties not informally agreed to extend the Response Deadline, the Defendants' response would have been due on March 31, 2021, and the Motions Deadline of April 1, 2021, would have run after the Response Deadline. Under most circumstances, therefore, the language of Bankr. M.D. Fla. Local Rule 7001-1(k)(6) and the Status Conference Order present a distinction without a difference.

However, in cases where the defendant receives an extension of the Response Deadline to a date after the Motions Deadline, can one say that the defendant, despite not having filed a single pleading, has "voluntarily appeared to try the case" as of the Motions Deadline? The unavoidable answer is "no." Here, the moment the Granddaughter first "appeared" was through her initial timely-filed Answer in which she claimed jury trial and Article III adjudication rights. Under these specific circumstances, the Court cannot conclude that the Granddaughter waived those rights merely because she failed to timely comply with the Motions Deadline because, at the time of the deadline, she had yet to "voluntarily appear to try the case." *Lindsey*, 854 F. App'x at 307 (quoting *Wellness*, 575 U.S. at 675) (cleaned up).

The problem though is that the Granddaughter completely ignored the Motions Requirement even after she filed her Answer and appeared to try the case. The Granddaughter does not, anywhere in her response, request that the Court provide her relief from the Status Conference Order, the Motions Deadline, or the Motions

Requirement. Instead, she argues that the Status Conference Order is unconstitutional and simply requests that the Court deny the Trustee's Renewed Motion. To suggest that a litigant may simply disregard the Status Conference Order by ignoring the Motions Requirement or failing to seek relief from, or an extension of, the Motions Deadline, cannot be countenanced. The failure to follow the proper procedures in asserting her rights, or to seek relief from those requirements, constitutes waiver. *See, e.g.*, *British Am. I*, 2013 WL 211336, at *4 n. 6 (explaining that the failure to file a motion to withdraw the reference, even where a defendant includes a jury trial demand in their answer, still constitutes waiver). It is undisputed that the Granddaughter failed to meet the requirements of the Status Conference Order, but worse, she failed to take any affirmative action at all to preserve her ability to meet the requirements at some later date or, alternatively, to seek relief from them.

If her failure to comply with the Motions Requirement was simply a mistake (which the Granddaughter has never argued and apparently does not believe), once she realized it, the Granddaughter could easily have sought some form of affirmative relief from the Motions Requirement such as, for example, filing a motion seeking an extension of the Motions Deadline. Had she sought affirmative relief in a timely manner, she likely would have – at the very least – preserved her ability to comply with the Motion Requirements.

But she has utterly failed to do so. In fact, to date, nearly ten months since she first appeared to try the case before the Court, she has still failed to seek any

affirmative relief. Instead, she chose only to respond to the Trustee's Motion by raising a laundry list of broad and unpersuasive arguments about the inappropriateness and unconstitutionality of the Court's procedures in an apparent attempt to justify ignoring them.

In short, the Granddaughter's failure to follow (timely or otherwise) or to seek an extension of, or relief from, the Motions Deadline and Motions Requirement is fatal to her argument that she has not waived her rights. As a result, the Court strikes the Granddaughter's assertion of her jury trial and Article III adjudication rights in the Answer.

## II. The Court's procedures are appropriate and constitutional.

The Granddaughter's response challenges the appropriateness and constitutionality of the Status Conference Order, but the arguments fail to justify the dramatic holding she seeks. Under 28 U.S.C. § 1334(b), the district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Under 28 U.S.C. § 157(a), the district courts may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy court. The United States District Court for the Southern District of Florida has provided just such a standing general order of reference. *See* S.D. Fla. Local Rule 87.2(a). However, the reference may be withdrawn under 28 U.S.C. § 157(d) which provides,

> the district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and

other laws of the United States regulating organizations or activities affecting interstate commerce.

The Federal Rules of Bankruptcy Procedure, consistent with the precise language of § 157(d), require that any motion to withdraw the reference be decided by the district court. *See* Fed. R. Bankr. P. 5011(a). The Court's Local Rules set forth procedures for ensuring that all the necessary information, such as the record, are properly transmitted to the district court for that purpose. *See* S.D. Fla. Local Rule 5011-1. Due to the labor and other resources necessary to appropriately administer a motion to withdraw the reference, it carries a $188 filing fee.[11] The Granddaughter argues the Court's requirement that she timely file a motion to withdraw the reference (1) impermissibly ties the right to a jury trial with the filing of a motion to withdraw the reference and (2) is facially unconstitutional due to the $188 filing fee.[12]

### A. Motion to Withdraw the Reference

The Granddaughter asserts that the Local Rules and Status Conference Order impermissibly tie the motion to withdraw the reference and jury trial demand. She argues that any requirement beyond making a basic jury trial demand under Fed. R. Civ. P. 38 is improper. None of the Granddaughter's case law in support of her argument in this regard, however, arises in a bankruptcy or other relevant context. *See, e.g.*, *Thomas v. Home Depot USA, Inc.*, 661 F. App'x 575, 577 (11th Cir. 2016)

---

[11] *See* https://www.flsb.uscourts.gov/clerks-summary-fees.

[12] The Granddaughter further makes broad arguments related to whether her jury trial or Article III adjudication rights exist. Those issues are of no consequence here because the Granddaughter has yet to, in any identifiable way, put her rights at issue. The question before the Court is whether, by her inaction, she has implicitly consented to a bench trial and final order and judgment from this Court.

(holding that a job applicant was entitled to a jury trial on his racial discrimination claim where the initial answer, but not the amended answer, contained a jury trial demand); *Solis v. City of Los Angeles*, 514 F.3d 946, 955 (9th Cir. 2008) (holding that a *pro se* prisoner had not waived his jury trial demand by failing to file jury instructions and special verdict forms). Her argument misses the mark because she fails to address the most fundamental reasons that a motion to withdraw the reference must accompany a jury trial demand made in the bankruptcy court.

Certainly, the Court agrees that district courts and bankruptcy courts alike may not "circumvent the Federal Rules of Civil Procedure by implementing local rules or 'procedures' which do not afford parties rights that they are accorded under the Federal Rules." *Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002, 1008 (11th Cir. 1992). However, S.D. Fla. Local Rule 5011-1, which underpins the Status Conference Order, does not circumvent Fed. R. Civ. P. 38 or any other rule. In fact, the local rule provides the means of implementation of Rule 38 in the bankruptcy context.

Withdrawal of the reference is necessary to assert a jury trial right in the bankruptcy court because, absent consent of the parties, bankruptcy courts cannot preside over jury trials.[13] *See* 28 U.S.C. § 157(e); *British American Isle of Venice v. Fullerton (In re British Am. Ins. Co., Ltd.)*, 488 B.R. 205, 221 (Bankr. S.D. Fla. 2013) ("*British Am. II*") ("[I]f a party to a proceeding before the bankruptcy court has a right

---

[13] Some courts' procedures allow them to treat a jury trial demand in an answer as a motion to withdraw the reference. *See, e.g.*, *Exec. Benefits*, 702 F.3d at 566–570. This Court's procedures do not and the Granddaughter neither argues that her jury trial demand constitutes a motion to withdraw the reference nor asks that the Court construe it as one. Rather, she argues that the Status Conference Order is unconstitutional and simply requests that the Court deny the Trustee's Renewed Motion.

to trial by jury under applicable law, the bankruptcy court may conduct a jury trial only with the consent of all parties."); *see also* Fed. R. Bankr. P. 9015; S.D. Fla. Local Rule 9015-1. So, if a party wants a jury trial, the parties must consent to the bankruptcy court conducting it, or the party demanding the jury trial must file a motion to withdraw the reference so the district court can preside over it. The district court must then determine whether to withdraw the reference. Unless the district court withdraws it, the order of reference stands in which case the jury trial must occur before the bankruptcy court, which – again – is not possible absent consent. In short, absent consent, a jury trial demand in the bankruptcy court that is unaccompanied by a motion to withdraw the reference would sit endlessly in limbo because the bankruptcy court can neither conduct the jury trial nor withdraw the reference. This is a simple fact of litigating claims in bankruptcy court. The Granddaughter has not provided, nor can the Court find, any support for the notion that requiring parties to file a motion to withdraw the reference to assert a jury trial demand in adversary proceedings before bankruptcy courts is improper.

This Court not only finds the requirement appropriate, but necessary. Neither this Court's Status Conference Order nor the Local Rules, as suggested by the Granddaughter, tie the withdrawal of the reference to jury trials. Rather, the Status Conference Order and Local Rules merely require what is procedurally necessary based on the limitations of the bankruptcy court's authority to preside over a jury trial and inability to withdraw the reference on its own. That inescapable fact more

than justifies the requirement that the party demanding a jury trial file a motion to withdraw the reference.

B. <u>The Filing Fee</u>

The Granddaughter further claims that the Court's $188 filing fee for a motion to withdraw the reference is facially unconstitutional.[14] For the Court to conclude the filing fee is facially unconstitutional, the Granddaughter must establish that "no set of circumstances exists" under which the filing fee would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Indigo Room, Inc. v. City of Ft. Myers*, 710 F.3d 1294, 1302 (11th Cir. 2013).

The Court notes, again, that the Granddaughter never sought relief from the filing fee. Only after the Trustee revealed the Granddaughter's mishandling of the Status Conference Order did the Granddaughter challenge the legitimacy of the obligation to file the motion and pay the fee by arguing that the fee is facially unconstitutional.

In support of her argument, the Granddaughter cites case law that is not remotely relevant and focuses on inapplicable constitutional provisions. *See, e.g.*, *Harper v. Virginia Bd. of Elections*, 383 U.S. 663 (1966) (finding poll taxes to be inconsistent with the Equal Protection Clause of the Fourteenth Amendment); *Murdock v. Pennsylvania*, 319 U.S. 105 (1943) (holding that a local ordinance

---

[14] The Granddaughter has not expressly stated whether her constitutional argument is based on facial or "as applied" unconstitutionality. Her arguments, however, sound exclusively in facial unconstitutionality; she has raised no argument, nor provided any evidence, to suggest that the filing fee is uniquely unconstitutional as applied to her.

requiring door-to-door salespeople to pay a license fee was an unconstitutional tax against Jehovah's Witnesses as applied under the free exercise clause of the First Amendment). The Granddaughter's argument seeking the drastic remedy of declaring the filing fee facially unconstitutional is not only insufficiently supported, but worse, fails to apprise the Court of relevant, but adverse, case law.

Filing fees, as a general matter, are constitutional. *See, e.g.*, *United States v. Kras*, 409 U.S. 434 (1973) (holding that filing fees in bankruptcy cases does not deny an indigent debtor due process of law). Further, where a litigant is indigent or otherwise unable to pay the filing fee, the Court can waive it, thereby providing a reasonable alternative means for accessing the remedy to those that otherwise cannot afford the fee.[15] *See* 28 U.S.C. §§ 1915(a)(1) & 1930(f); *see, e.g.*, *In re Richmond*, 247 F. App'x 831 (7th Cir. 2007); *Palestino v. Palestino (In re Palestino)*, 4 B.R. 721 (Bankr. M.D. Fla. 1980). This eviscerates any potential concern that the filing fee for a motion to withdraw the reference might impermissibly alienate a party's Seventh Amendment rights.

To whatever extent a legitimate argument against the constitutionality of this filing fee exists, the Granddaughter has failed to sufficiently articulate it. Therefore, the Court finds the filing fee constitutional.

---

[15] *See Lubin v. Panish*, 415 U.S. 709 (1974) (holding that a California statute requiring that political candidates pay a fixed filing fee was unconstitutional as applied to an indigent political candidate to the extent the statute failed to provide reasonable alternative means of ballot access).

**III.     The Defendants' affirmative defenses are appropriately raised.**

The Trustee seeks to strike the Defendants' second affirmative defense, lack of personal and subject matter jurisdiction, and fourth affirmative defense, lack of standing, arguing they are not appropriately raised as affirmative defenses, but rather must be asserted by motion before an answer is filed. Though Fed. R. Civ. P. 8(c) lists a series of non-exhaustive examples of affirmative defenses that neither includes jurisdictional nor standing defenses, "nothing in the language of Rule 8(c) purports to limit what may be pled as affirmative defenses." *Ramnarine v. CP RE Holdco 2009-1, LLC*, No. 12-61716-CIV, 2013 WL 1788503, at *4 (Bankr. S.D. Fla. Apr. 26, 2013).

The Court notes that subject matter jurisdiction "can never be waived or forfeited" and "may be resurrected at any point in the litigation." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Striking the Defendants' subject matter jurisdiction defense would provide no relief to the Trustee, as the Defendants would be well within their rights to raise the challenge at any time regardless of the affirmative defense.

Further, personal jurisdiction and standing are appropriately raised as affirmative defenses. There is nothing preventing a party from raising either of these arguments as affirmative defenses so long as they are raised in the Defendants' first Rule 12 response. *See* Fed. R. Civ. P. 12(b). Both personal jurisdiction and standing often raise "substantial questions of law better decided after factual development."[16]

---

[16] Because the Court has already addressed, and ruled against, the personal jurisdiction argument in its *Order Denying Motion to Transfer*, it notes that nothing in this Order should be construed as determining that additional arguments on personal jurisdiction and standing that were raised or should have been raised on adjudication of that motion are not waived. (Doc. 75).

*Ramnarine*, 2013 WL 1788503, at *4 (quoting *Achievement & Rehabilitation Ctrs., Inc. v. City of Lauderhill*, No. 12-61628-CIV, 2012 WL 6061762, *1 (S.D. Fla. Dec. 6, 2012)). Consequently, the Court denies the Motion to the extent it seeks to strike the Defendants' jurisdiction and standing affirmative defenses.

Accordingly, the Court **ORDERS** that the *Renewed Motion* (Doc. 40) is **GRANTED IN PART**. The Court strikes the Granddaughter's demand for jury trial and Article III adjudication rights. The *Renewed Motion* is otherwise **DENIED**.

### # # #

Copies To:
Zach Shelomith, Esq.

*Zach Shelomith, Esq. is directed to serve this Order on all interested parties.*